IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN RANDALL MYERS, JR.,<br><br>Defendant. | Case No. CR15-0094<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.  PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.  DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   *Was the Search Warrant Supported by Probable Cause?* . . . . . . . . . . 5
    B.   *Was the Search Warrant Insufficiently Particular or*
        *Overly Broad?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.   *Does the Leon Good-Faith Exception Apply?* . . . . . . . . . . . . . . 10

*V.   RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 7th day of December 2015, this matter came on for hearing on the Motion to Suppress Search Warrant (docket number 12) filed by the Defendant on November 23, 2015. The Government was represented by Assistant United States Attorney Anthony Morfitt. Defendant Steven Randall Myers, Jr. appeared in person and was represented by his attorney, Mark R. Brown.

## II. PROCEDURAL HISTORY

On October 27, 2015, Defendant Steven Randall Myers, Jr. was charged by Indictment with possession of a firearm and ammunition by an unlawful user of marijuana and after having been convicted of a misdemeanor crime of domestic violence. Defendant appeared on October 29, and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on December 28, 2015.

On November 23, Defendant timely filed the instant motion to suppress. The Government filed its resistance on December 2. Because of the pending motion to suppress, the trial was continued to February 1, 2016.

## III. RELEVANT FACTS

On June 26, 2014, Iowa County Deputy Sheriff Jon Fiser submitted an application to search Defendant's residence in North English, Iowa.[1] The accompanying affidavit advised the Court, in relevant part, as follows:

- On June 21, 2014, Deputy Fiser and Iowa County Deputy Andrew Pahl responded to a call at Defendant's residence in North English, Iowa.

- Deputy Fiser knew the location to be the residence of Steven Myers (the Defendant) and Christina Myers.

- Deputy Fiser was very familiar with Defendant, having dealt with him several times annually during calls for service over the last nine years.

- While en route to the residence, Iowa County Dispatch informed the deputies that a female at the residence advised that Defendant was "acting up" and had "threatened to shoot her with a BB gun." The deputies were told that Defendant had been drinking and there were weapons in the house. The deputies were also told that Dylan Gray had Defendant restrained on the ground.

- The deputies arrived at the residence at 12:53 a.m.

---

[1] The application, attachments, and supporting affidavit were introduced as Government's Exhibit 1.

2

- Deputy Fiser observed Christina Myers (hereafter, "Christina"), who he knew to be Defendant's wife, standing in the yard between Defendant's residence and the residence to the north. Christina was speaking with a neighbor.

- Christina advised the deputies that Dylan Gray had left the location and Defendant was in the residence.

- Christina advised the deputies that she had come home earlier and Defendant had already been arguing with others. Defendant then began arguing with Christina and accused her of cheating on him.

- Christina asked Dylan Gray to come to the residence because Defendant was being "belligerent." According to Christina, Gray arrived at the residence, took a BB gun away from Defendant, and Gray and Defendant had an "altercation."

- Christina told the deputies that Defendant had not touched her and she did not want to pursue charges against him.

- Christina told Deputy Fiser that Defendant's mother, Rosemarie Foubert, was coming to the residence to pick up the couple's children. Fiser suggested that either Christina or Defendant leave the residence for the night to avoid further problems, and Christina suggested having Defendant leave with his mother.

- As he was speaking with Christina, Deputy Fiser saw a rifle-style BB gun lying in the grass in front of Defendant's residence.

- Defendant opened the door to the residence and "ushered in" Deputy Pahl. After he completed his conversation with Christina, Deputy Fiser then entered the residence.

- Defendant appeared to be very intoxicated; he was very unsteady on his feet and had slurred speech and watery, bloodshot eyes.

- Defendant told the deputies that he and a friend "had a good wrestling match in the front yard."

- Defendant told Deputy Fiser he was willing to go with his mother for the night if his children went with him.

- After Defendant's mother arrived, she and Defendant and the three children then left the area.

- After Defendant left the residence, the deputies spoke again with Christina. She opined that Defendant's drinking was the primary cause of problems between them. She told the deputies that Defendant had "several previous domestic assaults."

- Deputy Fiser asked Christina if there were guns in the residence, other than the BB gun. Christina stated Defendant had two 12-gauge shotguns as well as other firearms. She said Defendant keeps the guns in the attic, which is accessible by a pull-down ladder.

- Defendant's criminal history includes a 1997 misdemeanor conviction that was pled down from a charge of assault causing bodily injury domestic abuse; a 2004 conviction for assault, following an original charge of domestic abuse assault; and a 2008 conviction for assault following a charge of domestic abuse assault without intent causing injury. Defendant also has convictions for OWI in 1999 and 2001; and intoxication convictions in 2004 and 2010.

- Defendant is prohibited from possessing firearms under federal law because he was convicted of domestic abuse assault on August 25, 2010.

Based on the allegations set forth in Deputy Fiser's affidavit, I concluded there was probable cause for the issuance of a search warrant. I authorized the search of any house or structure on the property, including the garage and any vehicles located on the property.[2] In addition to any firearms or ammunition, I authorized a search of other items, such as "[i]ndicia of occupancy, residence, and/or of the premises being searched. . . ."[3]

---

[2] The property to be searched was described on Attachments A-1 and A-2 (Government's Exhibit 1 at 7-8).

[3] A description of the items to be seized was found on Attachment B (Government's Exhibit 1 at 9).

4

The search warrant was executed on June 26, 2014. Among other things, officers found two shotguns in a child's bedroom closet, *not* in the attic. Ammunition was found throughout the house, including in a child's bedroom closet, the kitchen, and Christina's vehicle. Authorities also found a wooden "dugout," commonly used to conceal marijuana, and a "one hitter" on top of the refrigerator. Drug paraphernalia and marijuana residue were found in the bedroom shared by Defendant and Christina.

## IV. DISCUSSION

In his motion to suppress, Defendant argues the search warrant application and supporting affidavit lack probable cause for the issuance of a search warrant. While not a model of clarity, Defendant's brief also seems to argue the warrant does not satisfy the "particularity" requirement of the Fourth Amendment. It is not clear to the Court, however, whether Defendant is arguing the warrant's description of the items to be seized lacks particularity; or if Defendant is arguing the search warrant is overly broad in permitting a search of the entire house. In response, the Government argues the search warrant was supported by probable cause, adequately describes the items to be seized, and properly permitted a search of the whole house. Alternatively, the Government argues that even *if* the search warrant is otherwise invalid, the exclusionary rule is inapplicable due to the "good-faith exception" found in *United States v. Leon*, 468 U.S. 897 (1984).

### A. Was the Search Warrant Supported by Probable Cause?

Initially, Defendant argues the application and supporting affidavit do not establish probable cause for a search of Defendant's residence. The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. A warrant is required to search a person's house, with certain exceptions not applicable here. *Kentucky v. King*, 563 U.S. 452, 459 (2011). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances

set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)).

Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). In this case, no oral testimony was presented to me when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827.

According to the affidavit in this case, Deputy Fiser was very familiar with Defendant, and had been called to the Myers' residence on multiple occasions over the last nine years. Christina Myers told the deputies that Defendant had several previous domestic assaults. Prior to submitting the application for search warrant, Fiser verified that Defendant had three charges of domestic abuse assault pled down to assault, but was convicted of domestic abuse assault on August 25, 2010. Accordingly, possession of a firearm by Defendant would violate federal law.

6

While en route to the residence, the deputies were told that Defendant was acting up, had threatened to shoot a female at the residence with a BB gun, and had been drinking. They were also told there were weapons in the house. Upon arrival at the residence, Defendant's wife told the deputies that Dylan Gray had come to the residence at her request because Defendant was being belligerent, and Gray had taken a BB gun away from Defendant. Christina's statements were corroborated when Deputy Fiser saw a rifle-style BB gun lying in the grass. When speaking with the deputies, Defendant also confirmed that he had a "good wrestling match" with a friend in the front yard.

When asked by Deputy Fiser if Defendant had any other guns, Christina disclosed that Defendant had two 12-gauge shotguns as well as other firearms. According to Christina, Defendant kept the guns in the attic. Christina's statements regarding her husband's activities and prior criminal record were corroborated by Deputy Fiser's observations and review of Defendant's record. Common sense suggests that Christina had personal knowledge of Defendant's possession of firearms. It is reasonable to infer that her statements that weapons could be found in the attic were truthful. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) ("Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant."). Because Defendant was previously convicted of domestic abuse assault, any firearms found in his possession would be "evidence of a crime." Accordingly, I believe the affidavit submitted in support of the search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Grant*, 490 F.3d at 631.

### B. Was the Search Warrant Insufficiently Particular or Overly Broad?

Next, Defendant appears to argue the search warrant was not sufficiently "particular" to satisfy the requirements of the Fourth Amendment. Among other things, the Fourth Amendment requires a search warrant to "particularly describe[]" the "things

to be seized." The Eighth Circuit Court of Appeals recently summarized the particularity requirement of the Fourth Amendment, as follows:

> The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized." (emphasis added). Particularity prohibits the government from conducting "general, exploratory rummaging of a person's belongings." "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." Furthermore, "the degree of specificity required will depend on the circumstances of the case and on the type of items involved. This particularity standard is one of "practical accuracy rather than" of hypertechnicality. The Fourth Amendment requires particularity in the warrant, not supporting documents like an application or affidavit.

*United States v. Sigillito*, 759 F.3d 913, 923-24 (8th Cir. 2014).

Here, the items to be seized were described in Attachment B to the search warrant.[4] The warrant authorized the officers to search for "[i]ndicia of occupancy, residence, and/or ownership of the premises being searched," and then provided examples of the type of evidence falling within that category. The warrant also authorized the search for weapons and ammunition, together with any records reflecting the purchase or possession of those items. In addition, the warrant authorized the search for any packaging material, owner's manuals, or literature evidencing the acquisition or disposition of firearms.

In his brief, Defendant refers generally to the particularity requirement of the Fourth Amendment, citing *Sigillito* and *United States v. Saunders*, 957 F.2d 1488 (8th Cir. 1992), but provides no argument regarding the manner in which he believes the warrant in this case falls short of that requirement. I believe the description of the items to be

---

[4] *See* Government's Exhibit 1 at 9 (docket number 24-2 at 9).

seized in this case matches or exceeds the precision of the warrants in *Sigillito* and *Saunders*, which the Court found satisfied the Fourth Amendment particularity requirement. *See Sigillito*, 759 F.3d at 922; *Saunders*, 957 F.2d at 1490.

Defendant's brief also seems to suggest the search warrant was overly broad. If I understand Defendant's argument correctly, he believes that probable cause to search, if any, was limited to a search of Defendant's attic.

> The search warrant per this case, mentions, attachments, A-1 and A-2, but these attachments, do not offer or provide, with due respect, detail as to any specificity where law enforcement may search, yet the breadth of the warrant expands the confines of the search, when the only direct information law enforcement received per this case and firearms, referenced — the home attic.

Defendant's Memorandum (docket number 12-1) at 5, ¶ 12.

It is true that Christina Myers told Deputy Fiser she believed Defendant kept his firearms in the attic. It is also true that there must be a "nexus" between the contraband being sought and the place to be searched. *Keele*, 589 F.3d at 943. *See also United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). Defendant does not cite any authority, however, for his argument that if law enforcement authorities are told contraband can be found in a certain part of the house, probable cause is lacking to search other parts of the house.

In this case, officers were looking for firearms to support their belief that Defendant was a prohibited person in possession of firearms, in violation of federal law. The Court takes judicial notice of the fact that firearms are easily moved and concealed. As pointed out by Defendant's counsel at the hearing, several days had elapsed between the incident on June 21 and the issuance of the warrant on June 26. Defendant had plenty of time to remove the firearms from the attic and store them elsewhere. (Here, the two shotguns were found in a child's closet.) Furthermore, as noted by the Government's attorney, the warrant authorized a search for indicia of occupancy at the residence, and records

9

pertaining to the purchase or ownership of firearms. Obviously, those items could be found throughout the house. Accordingly, to the extent Defendant may be arguing that probable cause to search was limited to the attic, I find the argument to be without merit.

## C. Does the Leon Good-Faith Exception Apply?

As set forth above, I believe the search warrant was supported by probable cause, described with sufficient particularity the items to be seized, and was not overly broad. Accordingly, Defendant's motion to suppress should be denied on that basis, and it is unnecessary to consider the Government's alternative argument that the *Leon* good-faith exception precludes suppression of the seized evidence.[5] Nevertheless, I will address the Government's argument in case the district court disagrees with my analysis.

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" will not be suppressed. *Id.* at 922.

---

[5] The issues of probable cause and the good-faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good-faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g., United States v. Pruett*, 501 F.3d 976, 979 (8th Cir.2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir.2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir.2006).

An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

Defendant did not file a reply brief and, therefore, did not address the Government's *Leon* argument in writing. At the time of hearing, however, I asked Defendant's counsel which of the *Grant* circumstances he believed would invalidate the *Leon* good-faith exception. Mr. Brown conceded that neither of the first two circumstances described in *Grant* are applicable. That is, the search warrant application and affidavit do not contain any false statements made knowingly and intentionally or with reckless disregard for their truth, and it is not asserted that I "wholly abandoned" my judicial role in issuing the warrant. Mr. Brown argued, however, that the third circumstance described in *Grant*, and "perhaps" the fourth circumstance, are applicable here.

The third circumstance described in *Grant* provides that an officer's reliance on a search warrant is not "objectively reasonable" if the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court noted that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find

nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Id.* at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). As set forth above, I believe the search warrant application and supporting attachments establish probable cause to search Defendant's residence. Even *if* the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." *See also United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

The fourth *Grant* circumstance provides that an officer's reliance on a search warrant is not "objectively reasonable" when the warrant is "so facially deficient" that the officer could not reasonably presume the warrant to be valid. It is not clear to me what "facial deficiency" Defendant is asserting here. To the extent Defendant is referring to the description of the property to be seized, as set forth in Attachment B, I have already considered and rejected that argument. It necessarily follows that Defendant cannot show the executing officers "could not reasonably presume the warrant to be valid" because of a "facial deficiency" on the warrant.

In summary, I believe the officers' reliance on the search warrant was "objectively reasonable." Accordingly, even *if* the search warrant was subsequently determined to be invalid, the exclusionary rule does not apply and the evidence would not be suppressed. *Leon* 468 U.S. at 922.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Suppress (docket number 12) be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party*

*asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections."* Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on December 7, 2015.

DATED this 10th day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA